UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,

     Plaintiff,

  vs.        Case No. 08-CR-012-C-1

STEVEN M. SKOIEN,    Madison, Wisconsin
           May 7, 2008
      Defendant. 12:40 p.m.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF PLEA HEARING
HAD BEFORE THE HONORABLE BARBARA B. CRABB

APPEARANCES:

For the Plaintiff: Office of the United States Attorney
       BY:  TIMOTHY O'SHEA
       Assistant United States Attorney
       City Station, Suite 200
       660 West Washington Avenue
       Madison, Wisconsin  53703

For the Defendant: Federal Defender Services of
       Wisconsin, Inc.
       BY:  MICHAEL LIEBERMAN
       222 West Washington Avenue
       Suite 300
       Madison, Wisconsin  53703

Also Present:   Steven M. Skoien, Defendant
       Rhonda K. Frank-Loron, Pretrial
        Services Officer

CHERYL A. SEEMAN, RMR, CRR
Official Court Reporter
United States District Court
120 North Henry Street, Room 520
Madison, Wisconsin  53703
1-608-255-3821

```
 1              THE CLERK:  Case No. 08-CR-12-BBC-1, United
 2   States of America versus Steven M. Skoien, called for
 3   a plea hearing.  May we have appearances, please?
 4              MR. O'SHEA:  Good afternoon.  Tim O'Shea for
 5   the United States.
 6              THE COURT:  Thank you.
 7              MR. LIEBERMAN:  Good afternoon, Your Honor.
 8   Mr. Skoien appears in person with his attorney,
 9   Michael Lieberman.
10              THE COURT:  Thank you.  Mr. Skoien, for the
11   record, how old are you?
12              THE DEFENDANT:  28.
13              THE COURT:  How much formal education have
14   you had?
15              THE DEFENDANT:  My senior year.
16              THE COURT:  Is there any reason why you might
17   not understand what's being said to you today, such as
18   being ill, being on medication, being very tired or
19   being under the influence of any drugs or alcohol?
20              THE DEFENDANT:  No.
21              THE COURT:  Mr. Lieberman, have you and
22   Mr. Skoien received a copy of the indictment in this
23   case?
24              MR. LIEBERMAN:  We have, Your Honor, and we
25   waive reading.
```

1         THE COURT:  Mr. O'Shea, what would be the

2   maximum penalties to which Mr. Skoien would be subject

3   if he is found guilty?

4         MR. O'SHEA:  Mr. Skoien is going to plead

5   guilty to the one-count indictment charging a

6   violation of 18 USC Section 922(g)(9).  The maximum

7   penalties are a prison term not more than ten years, a

8   $250,000 fine, a three-year term of supervised release

9   and a $100 criminal assessment penalty.

10        THE COURT:  Did you say 20 years?

11        MR. O'SHEA:  Ten.

12        THE COURT:  That's what I thought it should

13  be.  Okay.

14        MR. LIEBERMAN:  Your Honor, as long as we are

15  talking about the indictment, if I could just put one

16  point on the record and I know Mr. O'Shea will cover

17  this later.  The indictment lists three separate

18  firearms.

19     Based on discussions with Mr. O'Shea, Mr. Skoien

20  is only going to be pleading guilty to possessing one

21  of the three guns.  The other guns were found during a

22  search, but I think the Government now agrees that

23  they won't be able to prove for purposes of sentencing

24  that he possessed any more than the one shotgun he

25  used for hunting.

1           THE COURT:  The Winchester Model 120?

2           MR. LIEBERMAN:  Yes.

3           THE COURT:  Okay.

4           MR. LIEBERMAN:  I just wanted to be clear

5    about that.

6           THE COURT:  That's right, Mr. O'Shea, as far

7    as you are concerned?

8           MR. O'SHEA:  That's right.

9           THE COURT:  Okay.  Then, Mr. Lieberman, do

10   you know any reason why I should not ask Mr. Skoien

11   what his plea is to the indictment?

12          MR. LIEBERMAN:  No, Your Honor.

13          THE COURT:  Mr. Skoien, what is your plea to

14   the indictment?

15          THE DEFENDANT:  Guilty.

16          THE COURT:  Okay.  And I understand you are

17   pleading guilty to possessing this one shotgun?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay.  Mr. Lieberman, have you

20   had a chance to talk with Mr. Skoien about any

21   possible defenses that he may have to this charge and

22   about the consequences of pleading guilty?

23          MR. LIEBERMAN:  I have, Your Honor.

24          THE COURT:  And, Mr. Skoien, have you had

25   enough time to talk with Mr. Lieberman about these

1 | matters?

2 |         THE DEFENDANT:  Yes.

3 |         THE COURT:  Would you tell me in your own

4 | words what you understand the Government is charging

5 | you with doing?

6 |         THE DEFENDANT:  Possessing a firearm after I

7 | had been convicted of domestic violence.

8 |         THE COURT:  And the Government says that you

9 | possessed that on or about December 3rd, 2007?

10 |         THE DEFENDANT:  Yes.

11 |         THE COURT:  And the Government says that you

12 | did it in the Western District of Wisconsin?

13 |         THE DEFENDANT:  Yes.

14 |         THE COURT:  And the Government said that your

15 | possession was knowing and unlawful; that is, it

16 | wasn't because of a mistake or an accident or because

17 | you didn't know what you were doing?

18 |         THE DEFENDANT:  Yes.

19 |         THE COURT:  Okay.  Mr. Skoien, do you

20 | understand that if I accept your plea and adjudge you

21 | guilty, you could be subject to penalties up to and

22 | including the maximum that Mr. O'Shea went over, and

23 | that is a maximum of ten years in prison, a fine of as

24 | much as $250,000, three years supervised release and a

25 | $100 criminal assessment penalty and you could be

1  subject to additional time in custody if you violated

2  the terms of your supervised release and were sent

3  back to prison and you could be subject to deportation

4  if you are not a citizen?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that when I

7  sentence you, I can give you any sentence not

8  exceeding the statutory maximum?  I will be taking

9  into consideration the sentencing guidelines when I

10  decide what sentence to impose on you.

11      The probation office will calculate the

12  guidelines starting with the number of points

13  attributable to the offense, the fact that you have

14  accepted responsibility by pleading guilty, your role

15  in the offense, your prior criminal record and any

16  other factor that's relevant.

17      And after the probation office has calculated the

18  range, it will submit a recommendation to the Court.

19  Mr. Lieberman and Mr. O'Shea will each have an

20  opportunity to object to the range if they think that

21  it wasn't calculated correctly.

22      I will rule on their objections, I will determine

23  the applicable guideline range and I will probably

24  sentence within that range, but I could give you a

25  higher sentence or a lower one if I believed that such

1   a sentence would better carry out the purposes of

2   sentencing.   Do you understand that?

3            THE DEFENDANT:   Yes.

4            THE COURT:   Do you understand that by

5   pleading guilty, you are giving up your right to a

6   trial?

7            THE DEFENDANT:   Yes.

8            THE COURT:   Do you understand that if you

9   would continue to plead not guilty, you would be

10   entitled to a trial by jury, there would be 12 persons

11   who would serve on the jury and you could help choose

12   the 12 from those who came in for jury selection?

13            THE DEFENDANT:   Yes.

14            THE COURT:   Do you understand that all 12

15   jurors would have to agree unanimously before they

16   could find you guilty?

17            THE DEFENDANT:   Yes.

18            THE COURT:   Do you understand that throughout

19   a trial you would be presumed to be innocent and the

20   Government would have the burden of proving beyond a

21   reasonable doubt that you committed this offense?

22            THE DEFENDANT:   Yes.

23            THE COURT:   Do you understand that at a trial

24   you would have the right to cross-examine the

25   witnesses against you through your counsel; you would

1  have the right to testify in your own behalf if you

2  chose to, but you couldn't be required to testify; you

3  would have the opportunity to present testimony and

4  other evidence in your defense and you could compel

5  the attendance of witnesses?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that you have a

8  right to court-appointed counsel at government expense

9  through all stages of this proceeding?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that under the

12  Constitution of the United States, no one can be

13  forced to admit that he or she has committed a crime?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that when you

16  plead guilty, you are giving up that right against

17  incriminating yourself?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And, Mr. O'Shea, would you state

20  for the record the terms of the agreement you have

21  reached with the defense?

22          MR. O'SHEA:  Yes, Your Honor.  In paragraph

23  1, the defendant has agreed to plead guilty to Count

24  1.

25          Paragraph 2 is a subset of the trial rights that

1    the defendant acknowledges that he is giving up, a

2    subset of the rights that the Court has just gone

3    over, but there is an important addition, and that is

4    the last couple of sentences of paragraph 2 where it

5    indicates that Mr. Skoien has reserved his right to

6    appeal an adverse determination of his motion to

7    dismiss the indictment under the Federal Rules of

8    Criminal Procedure.  And Mr. Skoien understands that

9    if he prevails on that motion to dismiss the

10   indictment on appeal that the United States recognizes

11   that he can withdraw his guilty plea.

12        In paragraph 3, Mr. Skoien indicates his

13   understanding that there could be evidence in the case

14   that could be subjected to DNA testing and that he

15   could petition the Court for post conviction testing

16   of that evidence, but he has waived by his signature

17   the right to post conviction DNA testing of all

18   evidence.

19        Paragraph 4:  The United States agrees that

20   Mr. Skoien's guilty plea will completely resolve all

21   possible federal criminal violations that have

22   occurred here in the Western District so long as it

23   relates to the conduct described in the indictment and

24   it was known to the Government as of the date of the

25   plea agreement.  Of course the agreement is limited to

1    those types of cases for which my office has exclusive

2    decision-making authority.

3        Mr. Skoien understands that I will provide my

4    full file to the probation office for the probation

5    office to use in preparing the presentence report.

6        The Government will recommend to the Court that

7    he -- in paragraph 5, the Government will recommend

8    that the Court, in determining Mr. Skoien's sentence,

9    to give him the maximum available reduction for

10   acceptance of responsibility of this as long as the

11   defendant in fact has and continues to accept

12   responsibility.

13       In paragraph 6, Mr. Skoien has agreed to complete

14   a financial statement and return it to my office

15   within one week.  He also agrees that the probation

16   office may disclose financial information that they

17   get from the defendant in connection with the

18   preparation of the presentence report.

19       Paragraph 7:  In the event of an appeal, the

20   Government reserves the right to make arguments in

21   support of or in opposition to the sentence imposed by

22   the Court.

23       Paragraph 8:  Mr. Skoien understands that any

24   sentencing discussions that Mr. Lieberman and I have

25   had are not part of the plea agreement and that he

1   should not rely upon the possibility of a particular

2   sentence based on those discussions.

3        Paragraph 9:  By Mr. Skoien's signature, he

4   acknowledges his understanding that the Government has

5   made no promises or guarantees concerning the

6   sentence.  And as he has already told the Court, he

7   acknowledges his understanding that the Court is not

8   required to accept recommendations and that the Court

9   can impose a sentence up to and including the maximum

10  penalties set out in page 1.

11       This plea agreement has been approved by my

12  office and this is the plea agreement of the United

13  States.

14            THE COURT:  Thank you.  Mr. Lieberman, is

15  that your understanding of the agreement?

16            MR. LIEBERMAN:  It is, Your Honor.

17            THE COURT:  And, Mr. Skoien, is it your

18  understanding of the agreement?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Did anyone make you any other

21  promises to get you to plead guilty?

22            THE DEFENDANT:  No.

23            THE COURT:  Did anyone threaten you or force

24  you to plead guilty?

25            THE DEFENDANT:  No.

1          THE COURT:  Did anyone tell you that you are

2   going to get a particular sentence?

3          THE DEFENDANT:  No.

4          THE COURT:  Do you understand that you are

5   not free to withdraw your plea of guilty even if I do

6   not accept the Government's recommendations?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Mr. O'Shea, what would you have

9   been prepared to prove had the case gone to trial?

10         MR. O'SHEA:  The United States would have

11   introduced a copy of Mr. Skoien's December 19th

12   judgment where he his convicted of misdemeanor

13   domestic battery in violation of Wisconsin law.

14      The United States would have called Special Agent

15   Bill Baudhuin from ATF to testify that the Winchester

16   Model 120 12-gauge shotgun was manufactured in New

17   Haven, Connecticut and consequently moved in

18   interstate commerce, arrived here in Wisconsin.

19      Next we would have called Janesville Police

20   Department Officer Todd Bailey who would explain that

21   he assisted in a probation search conducted by

22   Wisconsin Probation and Parole Officer Mary Wendel

23   based on an alert from the DNR that basically

24   indicated Mr. Skoien here had purchased a deer gun

25   hunting license.  Probation Officer Wendel had been

1  supervising Mr. Skoien for that misdemeanor conviction

2  that followed Mr. Skoien's physical dispute with his

3  wife.

4       So Officer Bailey went to the defendant's home,

5  and that's at 1634 Garden Drive in Janesville in the

6  Western District of Wisconsin.  That is a home that

7  Mr. Skoien shared with his wife, Mrs. Skoien, and a

8  friend, Darin Rudolph.  In the basement, the probation

9  officers recovered the two weapons that are not the

10 basis for the plea; that is, the hunting rifle and the

11 pistol mentioned in the indictment.

12      Mr. Rudolph, however, also said that there was a

13 shotgun in his pickup truck outside.  Later he told

14 Officer Bailey that the shotgun was in fact

15 Mr. Skoien's and gave Officer Bailey permission to go

16 and retrieve that firearm, the 12-gauge shotgun.  And

17 in fact, in Mr. Rudolph's truck Officer Bailey found

18 the 12-gauge shotgun that is mentioned in Count 1 of

19 the indictment, also found Mr. Skoien's hunting coat

20 with a hunting tag on it and ten 12-gauge slugs in the

21 pockets.

22      At the same day there was a series of calls from

23 the Rock County Jail.  The defendant was taken to the

24 Rock County Jail based on what was perceived to be a

25 probation violation.  Mr. Skoien called his wife that

1   afternoon.  He had some pretty crabby things to say

2   about Mr. Rudolph letting the officers search his

3   truck, but then during that conversation Mr. Skoien

4   commented saying, "They knew mine was in Rudy's

5   truck."  That's because Rudy let them search his

6   vehicle.

7        And then a couple weeks after that, December

8   20th, 2007, and I would next call DNR Warden Michael

9   Dieckhoff who went to go talk with Mr. Skoien at the

10  Rock County Jail.  And after going over Mr. Skoien's

11  rights, Mr. Skoien admitted that he killed a

12  particular deer that fall with the Winchester 12-gauge

13  shotgun.

14        So those are the facts the United States would

15  rely upon to prove the violation as alleged in the

16  indictment.

17             THE COURT:  Thank you.  Mr. Lieberman, from

18  what you know about the case, is there anything

19  Mr. O'Shea has gone over that you think he could not

20  prove at trial?

21             MR. LIEBERMAN:  Nothing, Your Honor.

22             THE COURT:  And, Mr. Skoien, is there

23  anything that you think he could not prove at trial?

24             THE DEFENDANT:  No.

25             THE COURT:  Would you tell me in your own

1   words what happened on December 3rd, 2007?

2           THE DEFENDANT:  I had come back from hunting

3   and my probation officer called and wanted me to stay

4   at home because she said she had to come over to talk

5   to me.  She come over with, I believe, eight probation

6   agents and the Janesville Police Department.

7       They searched my roommate's room and found the 25

8   pistol, the 308.  They proceeded to check the rest of

9   the house and then Darin told them about the 12-gauge

10   in the truck and that's pretty much it.  They put me

11   in handcuffs and took me to jail.

12           THE COURT:  And that was your gun in the

13   truck?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Then on the basis of this

16   discussion with you and your attorney and upon the

17   basis of the entire record in the case, I find and

18   conclude that you have entered a plea of guilty

19   knowingly, understandingly and voluntarily after an

20   adequate opportunity to consult with your attorney,

21   with an understanding of the nature of the charge and

22   with an understanding of the consequences of a plea of

23   guilty.  I'm satisfied there is a factual basis for

24   the plea.

25       Accordingly, I find and adjudge you guilty of the

1   charge contained in the indictment.  I accept the plea

2   agreement conditionally pending review of the

3   presentence report.  And that report is to be filed no

4   later than June 11th, objections are due June 25th and

5   the sentencing date will be July -- I will say 18th.

6   Is that open?

7            MR. O'SHEA:  Works for the United States,

8   Your Honor.  What time?

9            THE CLERK:  1:20.

10           THE COURT:  1:20 on July 18th.

11           MR. LIEBERMAN:  That's fine, Your Honor.

12   Thank you.

13           THE COURT:  Anything further in this matter?

14           MR. O'SHEA:  From the Government's

15   perspective, there is no reason to reconsider the

16   release conditions.

17           MR. LIEBERMAN:  And I would agree with that,

18   Your Honor.

19           THE COURT:  Okay.  Then, Mr. Skoien, just so

20   that you know, you are still subject to the same bail

21   conditions that the magistrate judge imposed on you.

22           MR. LIEBERMAN:  Thank you, Your Honor.

23           THE DEFENDANT:  Thank you.

24       (Adjourn at 1:00 p.m.)

25

1            I, CHERYL A. SEEMAN, Certified Realtime and

2  Merit Reporter, in and for the State of Wisconsin,

3  certify that the foregoing is a true and accurate

4  record of the proceedings held on the 7th day of May,

5  2008, before the Honorable Barbara B. Crabb, Chief

6  Judge of the Western District of Wisconsin, in my

7  presence and reduced to writing in accordance with my

8  stenographic notes made at said time and place.

9  Dated this 13th day of November, 2008.

10

11

12

13

14

15                        _____

16                        Cheryl A. Seeman, RMR, CRR
                          Federal Court Reporter

17

18

19

20

21

22

23  The foregoing certification of this transcript does not
    apply to any reproduction of the same by any means unless
24  under the direct control and/or direction of the
    certifying reporter.

25